UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CARLY LUTES; KEVIN LUTES; and | : | |
| S.L., P/P/A KEVIN AND CARLY LUTES, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | 3:10-cv-1549 (WWE) |
| | : | |
| KAWASAKI MOTORS CORP., U.S.A. and | : | |
| KAWASAKI MOTORS MANUFACTURING | : | |
| CORP., U.S.A., | : | |
|     Defendants. | : | |

**MEMORANDUM OF DECISION ON
DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Carly Lutes, Kevin Lutes and S.L., daughter of Carly and Kevin Lutes, bring this action against defendants Kawasaki Motor Corp., U.S.A. ("KMC") and Kawasaki Motors Manufacturing Corp., U.S.A. ("KMM"), stemming from a jet ski accident. Now pending before the Court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. #22). For the following reasons, defendants' motion will be denied except as to plaintiffs' claim for intentional infliction of emotional distress, which will be dismissed without prejudice.

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

**BACKGROUND**

For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of the complaint as true.

Plaintiffs are residents of Groton, Connecticut. S.L. is the four-year-old daughter of Carly and Kevin Lutes. KMC is a corporation incorporated in Delaware and has its principal place of business in California. KMM is a Nebraska corporation and has its

1

principal place of business in Nebraska. Defendants designed, manufactured, distributed, sold and placed in the stream of commerce a 2008 Jet Ski STX-15F ("Jet Ski"), which is a personal watercraft product.

On May 21, 2008, Kevin Lutes purchased a brand new Jet Ski from Coastline Motorsports, an authorized dealer of defendants' products, located in Connecticut. The Jet Ski reached the Lutes family without substantial change in the condition in which it was manufactured, distributed and sold by defendants. Between its date of purchase and the date of the accident, the Jet Ski was periodically used and was properly stored and maintained at the Lutes' home in Groton, Connecticut. At no time was the Jet Ski altered or modified from its original, new condition by plaintiffs or by any other person.

On August 31, 2008, Kevin was operating the Jet Ski on the western branch of the Susquehanna River (Lake Augusta) near Shikellamy State Park in Sunbury, Pennsylvania. Carly was seated behind Kevin, and S.L. was seated in front of Kevin. At the time, plaintiffs were transporting an unmanned, inflated towable tub in the water by a rope secured to the Jet Ski using a recessed hook on the port (left) side of the Jet Ski. The rope had been threaded through the recessed hook and knotted such that one length of rope flowed from the recessed hook to the inflated tube and the other length of rope flowed from the recessed hook to the hook at the rear of the Jet Ski. During transport of the tube, the latter length of rope was slack, and Carly was holding coils of the rope length loosely around her left arm.

While transporting the tube, the recessed hook suddenly and without warning broke away from the Jet Ski decking causing the previously slack rope length to rapidly constrict around Carly's left arm, pulling her violently off of the Jet Ski and severing her

2

left hand from her arm.

Carly's injuries resulted in the traumatic amputation of her left hand and required emergency surgical replantation of the hand and the insertion of surgical hardware. She suffered additional injuries to her left arm, wrist and hand and requires ongoing medical care.

The recessed hook was expected to and did reach plaintiffs without substantial change in the condition from which it was sold. Neither plaintiffs nor anyone else made any modifications or alterations to the recessed hook after the purchase of the Jet Ski.

Plaintiffs allege that the Jet Ski was defective and unreasonably dangerous. They assert claims under the Connecticut Product Liability Act, Conn. Gen. Stat. § 52-572n et seq. ("CPLA") and claims under state common law for loss of consortium under the CPLA, bystander emotional distress and negligent infliction of emotional distress. Plaintiffs also seek punitive damages pursuant to Conn. Gen. Stat. § 52-240b.

Plaintiffs originally commenced this action in Connecticut state court. Defendants removed it to this Court pursuant to 28 U.S.C. § 1441.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief

3

above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937 (2009).

Defendants move to dismiss the claims for bystander emotional distress and the negligent infliction of emotional distress based on the exclusivity provision of the CPLA. They argue that the claims for negligent infliction of emotional distress are derivative claims that are truly bystander emotional distress claims and, therefore, also barred by the exclusivity provision of the CPLA. Defendants also assert that the complaint does not support a claim for punitive damages.

**I.    Exclusivity Provision of the CPLA**

Under the CPLA, a "product liability claim" includes all claims "brought for personal injury" caused by the manufacture, design or assembly of any product including claims based on strict liability in tort or negligence. Conn. Gen. Stat. § 52-572m(b). A claim under the CPLA is "in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." Conn. Gen. Stat. § 52-572n(a); see also Winslow v. Lewis-Shepard, Inc., 212 Conn. 462, 471 (1989) ("The legislature clearly intended to make our products liability act an exclusive remedy for claims falling within its scope."). A claim may be asserted against a defendant even if the plaintiff did not purchase the product from or enter into a contractual relationship with the seller. Conn. Gen. Stat. § 52-572n(b).

## A. Claims for Bystander Emotional Distress

A claim for bystander emotional distress is a derivative claim based upon an underlying tort committed against a third person. See Drew v. William W. Backus Hosp., 77 Conn. App. 645, 669 (2003). Such claim was first recognized under Connecticut law by the Connecticut Supreme Court in Clohessy v. Bachelor, 237 Conn. 31 (1996), after the enactment of the CPLA in 1979.

Twice, the Connecticut Superior Court has ruled, without analysis, that the CPLA bars any claim for bystander emotional distress. See Hill v. U.S. Smokeless Tobacco Co., 2006 Conn. Super. LEXIS 1842 (Conn. Super. Ct. June 19, 2006) ("[B]ystander emotional distress was not recognized as a viable cause of action at common law until 1996, well after the effective date of the CPLA."); Hayes v. Grossman's, Inc., 1997 Conn. Super. LEXIS 2378 (Conn. Super. Ct. Sept. 3, 1997). Defendants urge the Court to follow the leads of Hill and Hayes.

Hill and Hayes, however, do not stand alone on this issue. Rather, several other decisions conclude that the CPLA does not bar an action for bystander emotional distress. See DuJack v. Brown & Williamson Tobacco Corp., 2000 Conn. Super. LEXIS 379 (Conn. Super. Ct. Feb. 16, 2000) (holding that bystander emotional distress claim not barred by CPLA); Abbhi v. AMI, 1997 Conn. Super. LEXIS 1523 (Conn. Super. Ct. June 2, 1997) (CPLA does not bar bystander distress claim because it is asserted on behalf of a different victim of the tort). These decisions rest on the conclusion that the CPLA bars separate causes of action for one plaintiff whose claims are all subsumed within the CPLA. A bystander, as a second plaintiff, has his own personal claims which are not barred by the first plaintiff's claims. See, e.g., Densberger v. United Techs.

5

Corp., 297 F.3d 66, 70 (2d Cir. 2002) ("[T]he CPLA does not preempt all common law theories of product liability. Rather, as the exclusive basis for product liability claims under Connecticut law, the CPLA bars separate common law causes of action in product liability cases."); Rosenthal v. Ford Motor Co., 462 F. Supp. 2d 296, 304 (D. Conn. 2006); Winslow, 212 Conn. 462; Abbhi, 1997 Conn. Super. LEXIS 1523, at *34. The majority of Connecticut Superior Court cases, with the exception of Hill and Hayes, stand for the proposition that a second plaintiff can assert a derivative bystander claim even when another plaintiff asserts a claim under the CPLA.

Defendants urge that these cases were wrongly decided under the Connecticut Supreme Court's decision in Lynn v. Haybuster Manufacturing, Inc. In that case, the Supreme Court held that the CPLA did not bar a claim for loss of consortium. The Supreme Court relied upon (1) the fact that the common law recognized a claim for loss of consortium prior to the enactment of the CPLA; and (2) the legislative text and history which did not include any explicit legislative intent to preclude a claim for loss of consortium. 226 Conn. 282 (1993).

Defendants place too much emphasis on Lynn and its observations regarding the fact that a claim for loss of consortium predates the CPLA. In fact, Connecticut courts upholding a claim for bystander emotional distress claim in a products liability action have not relied on Lynn. In Abbhi, the court distinguished Lynn, finding it inapplicable because the legislature could not have used the CPLA to abrogate a plaintiff's right to recover under a bystander theory; such a right did not exist. Further, the court concluded that the CPLA only abrogates a given plaintiff's claims. It did not prevent a second plaintiff from asserting a bystander claim resulting from the same

6

incident. See 1997 Conn. Super. LEXIS 1523, at *37; see also DuJack, 2000 Conn. Super. LEXIS 379; Ritchie v. Gerber Prods. Co., 1998 Conn. Super. LEXIS 3292 (Conn. Super. Ct. Nov. 20, 1998) (relying on Abbhi).

Because Kevin and S.L. may assert bystander emotional distress claims despite Carly's CPLA claim, the bystander emotional distress claims will not be dismissed.

### B. Claims for Negligent Infliction of Emotional Distress

Defendants next seek dismissal of Kevin's and S.L.'s negligent infliction of emotional distress claims. Defendants argue that the claims are better characterized as bystander emotional distress clams because the complaint fails to allege any duty owed by defendants to Kevin and S.L.

To assert a claim for negligent infliction of emotional distress in the context of a products liability action, the plaintiff must allege that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." Carrol v. Allstate Ins. Co., 262 Conn. 433, 446 (2003). The fear of distress experienced by the plaintiffs must be reasonable in light of the defendants' conduct. Barrett v. Danbury Hospital, 232 Conn. 242, 261-62 (1995).

The key distinction between a claim for negligent infliction of emotional distress and a bystander emotional distress claim is whether the defendants owed a duty of care to the plaintiff. A claim for negligent infliction of emotional distress requires that the defendant owe a direct duty of care to the plaintiff; there is no such direct duty in a claim for bystander emotional distress. See Browne v. Kommel, 2009 Conn. Super. LEXIS 2012, *10-11 (Conn. Super. Ct. July 14, 2009). A claim for bystander emotional

7

distress requires the plaintiff to plead that:

> (1) he or she is closely related to the injury victim, such as the parent or the sibling of the victim; (2) the emotional injury of the bystander is caused by the contemporaneous sensory perception of the event or conduct that causes the injury, or by arriving on the scene soon thereafter and before substantial change has occurred in the victim's condition or location; (3) the injury of the victim must be substantial, resulting in his or her death or serious physical injury; and (4) the bystander's emotional injury must be serious, beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response.

Clohessy, 237 Conn. at 56.

In this case, the key question in determining whether plaintiffs have stated claims for negligent infliction of emotional distress is whether plaintiffs have pled a duty insofar as their claims arise from witnessing the injury to Carly or from the apprehension attendant to the incident. In Fischer v. McDonald's Corp., the court permitted a claim for negligent infliction of emotional distress to proceed on behalf of a mother who had purchased for her daughter a hamburger that was contaminated with blood. The court noted that the mother's claim was based on the "reasonable fear" that she had purchased a hamburger that may have caused injury to her daughter, not on having witnessed her daughter eat some of the hamburger. The court noted that the claim was different than a bystander claim because, according to the complaint, the mother was an active participant who was a victim based on her participation, not solely a witness to the tort. 47 Conn. Supp. 525 (2002).

The complaint in this case is unclear as to whether Kevin and S.L.'s emotional distress claims stem from witnessing the accident and the injury to Carly or from being active participants in the events that caused the accident. If the claims are based on

8

witnessing the injury, then it is duplicative of the bystander emotional claim and should be dismissed. If it is based on a different theory, then it may stand. Because the Court is unclear as to the nature of the claims, it will dismiss them without prejudice. Plaintiffs will be permitted to clarify these claims.

## II. Claim for Punitive Damages

The CPLA permits punitive damages "if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product." Conn. Gen. Stat. § 52-240b. Under Connecticut law, recklessness "is more than negligence, more than gross negligence." Dubay v. Irish, 207 Conn. 518, 532 (1988). The allegations that support a negligence claim may, under certain circumstances, also support a recklessness claim. Craig v. Driscoll, 262 Conn. 312, 341 (2003). "[R]eckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." Matthiessen v. Vanech, 266 Conn. 822, 833 (2003). It constitutes "more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention." Frillici v. Town of Westport, 264 Conn. 266, 278 (2003). "Simply using the word 'reckless' or 'recklessness' in the complaint is not enough. A specific allegation setting out the conduct that is claimed to be reckless ... must be made." Dumond v. Denehy, 145 Conn. 88, 91 (1958). Reckless disregard of a hazard may arise from knowing of it and failing to rectify it. See DuJack, 2000 Conn. Super. LEXIS 379, at *17-19.

The complaint sufficiently alleges that defendants knew or should have known

about the risks associated with the recessed hooks on the Jet Ski and failed to address the situation.  See Buchok v. J.C. Penney Corp., 2010 U.S. Dist. LEXIS 75134 (D. Conn. July 26, 2010) (denying dismissal of claim for punitive damages); McCurry v. Home Depot, 1994 Conn. Super. LEXIS 2231 (Conn. Super. Ct. Sept. 7, 1994); Nieves v. U-Haul, 1994 Conn. Super. LEXIS 1170 (Conn. Super. Ct. Apr. 28, 1994).  Therefore, the claim for punitive damages will be permitted to proceed.

## CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion to dismiss (Doc. #22) except as to plaintiffs' claim for negligent infliction of emotional distress, which will be dismissed without prejudice.  The Court will permit plaintiffs to file an amended complaint within seven days of the filing of this ruling.

Dated at Bridgeport, Connecticut, this 12th day of April, 2011.

                                           /s/
                                           Warren W. Eginton
                                           Senior United States District Judge