UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CARLY LUTES, KEVIN LUTES, AND :
S.L., PPA KEVIN AND CARLY      :
LUTES                         :
                              :
v.                            :    CIV. NO. 3:10CV1549 (WWE)
                              :
KAWASAKI MOTORS CORP., USA    :
AND KAWASAKI MOTORS           :
MANUFACTURING CORP.           :

**RULING ON PLAINTIFFS' OMNIBUS MOTION TO COMPEL RE:
MULTIPLE SETS OF OBJECTIONS AND RESPONSES TO
PLAINTIFFS' WRITTEN DISCOVERY REQUESTS [Doc. #173]**

Plaintiffs Carly and Kevin Lutes bring this products liability action against defendants Kawasaki Motors Corporation, USA (KMC), and Kawasaki Motors Manufacturing Corporation (KMM). It arises out of personal injuries plaintiffs sustained from an accident involving a Jet Ski manufactured by KMM and marketed and distributed by KMC. Pending before the Court is plaintiffs' motion to compel regarding multiple sets of objections and responses to plaintiffs' written discovery requests. [Doc. #173]. Defendants oppose plaintiffs' motion [Doc. #177], to which plaintiffs replied [Doc. #185].  Upon careful consideration, plaintiffs' motion to compel is GRANTED in part and DENIED in part, as set forth below.[1]

---

[1] Defendants initially requested that the Court hold oral argument on this motion, but later reported that oral argument was not necessary. Therefore, the Court relies on the parties' written submissions.

## I.   Background

The claims in this action arise from the use of a "recessed hook"[2] on plaintiffs' Jet Ski. Specifically, plaintiffs Carly and Kevin Lutes were using their Jet Ski to tow an unmanned inner tube, which was attached by rope to the Jet Ski's recessed hook and tow hook.  Plaintiff Carly Lutes was holding the excess rope when the recessed hook allegedly broke away from the Jet Ski, causing the tow rope to constrict around her arm, pulling her off the Jet Ski, and severing her left hand from her arm. Plaintiffs allege, <u>inter</u> <u>alia</u>, that the subject Jet Ski was defectively designed by using the recessed hook. Over the course of litigation, the parties have engaged in extensive fact discovery.

## II.   Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).  Information that is reasonably calculated to lead to the discovery of

---

[2] The parties dispute the proper term for the device in question. Plaintiffs refer to the subject device as a "cleat."  The owner's manual for the Jet Ski at issue refers to the device as a "recessed hook", while the Kawasaki parts system refers to it as a "cargo hook." For purposes of this ruling, the subject device will be referred to as a "recessed hook."

2

admissible evidence is considered relevant for the purposes of discovery.  See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991); Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988). "The party resisting discovery bears the burden of showing why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009).

## III. Other Applicable Law

### A. Verification of Responses to Document Requests

As an initial matter, as to certain document requests, plaintiffs' motion seeks an order compelling defendants to verify either that all documents have been produced after a diligent search, or alternatively, that despite a diligent search, no responsive documents were found. Defendants generally take exception to this, arguing that production of documents under Rule 34 does not require verification in the same manner as interrogatory responses. [Doc. #177, 24-25]. While this is generally true when responsive documents are produced, "when a response to a production for documents is not a production or an objection, but an answer, the party must answer under oath." Vazquez-Fernandez v. Cambridge College, Inc., 269 F.R.D. 150, 154 (D. P.R. 2010). Indeed, this Court has previously held that "a response that all documents have been produced does require attestation." Napolitano v. Synthes USA, LLC, 297 F.R.D. 194, 200 (D. Conn 2014) (emphasis in original; citation omitted). Other district courts have also required attestation when a party claims that the requested documents have already been

produced. See, e.g., Colon v. Blades, 268 F.R.D. 129, 132-33 (D. P.R. 2010) (citation omitted) ("When a party claims that the required documents have already been produced, it must indicate that fact under oath in response to the request. Nevertheless, if the party fails to make a clear and specific statement of such compliance under oath, the court may order it to produce documents."); Rayman v. Am. Charter Fed. Savings & Loan Ass'n, 148 F.R.D. 647, 651 (D. Neb. 1993) ("The [Advisory Committee] comment to [Rule 34] indicates that in such a situation [where the defendant responded by stating that the documents had been produced], the proper procedure for making the response is mandated by Rule 33, which requires responses by the party under oath."). Accordingly, to the extent that defendants have provided an "answer" to a request for production, or otherwise represented that there are no documents responsive to a request, the Court will require defendants to provide a sworn statement so indicating.

   B. **Production of KHI Documents, Generally**

   Earlier in this litigation, plaintiffs moved to compel defendants to produce documents in the possession of defendants' Japanese parent company, Kawasaki Heavy Industries, Limited ("KHI"), a non-party to this action. [Doc. #65]. By order dated July 31, 2012, the Court denied plaintiffs' motion in light of their failure to submit any facts or evidence establishing defendants' control over the documents in KHI's possession. [Doc. #89]. Plaintiffs now renew their argument that defendants "control" or otherwise have the ability to obtain basic

information and documents from KHI and seek to compel the production of this information. Defendants argue that plaintiffs have again failed to carry their burden of proof that defendants have "control" over the KHI documents plaintiffs seek.

As this Court previously noted, "In determining whether a corporation within the United States can be compelled to produce documents held by a foreign affiliate, this Court must first consider the nature of the relationship between the corporation and its affiliate." Hunter Douglas, Inc. v. Comfortex Corp., No. CIV. A. M8-85(WHP), 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999) (citations omitted). "If the nature of the relationship between the parent and its affiliate is such that the affiliate can obtain documents from its foreign parent to assist itself in litigation, it must produce them for discovery purposes. The critical inquiry is whether the affiliate can exercise custody and control over the documents." Id.; see also Pitney Bowes, Inc. v. Kern Int'l, Inc., 239 F.R.D. 62, 66 (D. Conn. 2006) (citations and internal quotations omitted)("While the particular form of the corporate relationship does not govern whether a party controls documents, the nature of the transactional relationship between the subsidiary and parent… is pivotal."). Moreover, the initial burden of proving the opposing party's control rests with the requesting party. See Honda Lease Trust v. Middlesex Mut. Assur. Co., No. 3:05CV1426(RNC), 2008 WL 3285242, at *2 (D. Conn. Aug. 7, 2008) (citing Pitney Bowes, 239 F.R.D. at 66).

In this Circuit, "courts go beyond defining 'control' as

the <u>legal right</u> of the [requested] party to obtain the documents
and include an inquiry into the <u>practical ability</u> of the
[requested] party to obtain these documents." <u>Pitney Bowes</u>, 239
F.R.D. at 66 (quoting <u>Power Integrations, Inc. v. Fairchild</u>
<u>Semiconductor Int'l, Inc.</u>, 233 F.R.D. 143, 145 (D. Del. 2005))
(emphasis and brackets in original). "[W]here the litigating
corporation is the subsidiary and the parent corporation is in
possession of the requested documents, courts have found control
to exist on the following <u>alternate</u> grounds:

1) the alter ego doctrine which warrant[s] 'piercing the
   corporate veil';

2) the subsidiary was an agent of the parent in the
   transaction giving rise to the lawsuit;

3) the relationship is such that agent-subsidiary can secure
   documents of the principal-parent to meet its own
   business needs and documents helpful for use in
   litigation;

4) there is access to documents when the need arises in the
   ordinary course of business; and

5) the subsidiary was marketer and servicer of the parent's
   products… in the United States."

<u>Pitney Bowes</u>, 239 F.R.D. at 66-67 (citing <u>Camden Iron & Metal,</u>
<u>Inc. v. Maurbeni Am. Corp.</u>, 138 F.R.D. 438, 441-42 (D. N.J.
1991)). "Moreover, courts consider the degree of ownership and
control exercised by the parent over the subsidiary, a showing
that the two entities operated as one, demonstrated access to
documents in the ordinary course of business, and an agency
relationship." <u>Pitney Bowes</u>, 239 F.R.D. at 67 (citing <u>Camden</u>
<u>Iron</u>, 138 F.R.D. at 442). Finally, and pertinent to the
discussion below, "there must be a nexus between the [documents

sought] and the party's relationship with its parent companies, taking into account, amount other things, the party's business responsibilities." Pitney Bowes, 239 F.R.D. at 67 (quoting United States Int'l Trade Comm. V. ASAT, Inc., 411 F.3d 245, 255 (D. D.C. 2005)).

Based on the Court's careful review of deposition testimony submitted by the parties, it appears that defendants at least have access to some documents when the need arises in the ordinary course of business. Accordingly, in general, it would appear that defendants have control of certain documents in KHI's possession. However, the Court's inquiry does not end there. Whether the Court orders production of documents in KHI's possession by defendants will largely turn on whether there is a nexus between the documents sought and the defendants' relationship with KHI, including the defendants' business responsibilities. Bearing this framework in mind, the Court now turns to plaintiffs' specific requests.

## IV. Discussion – Specific Requests
### A. First Set of Interrogatories and Requests for Production to KMC

Plaintiffs first take issue with certain KMC responses to plaintiffs' first set of interrogatories and requests for production.

- **Interrogatory No. 12 of 1st Set of Ints. to KMC**

Interrogatory No. 12 asks KMC to, "Identify every test on, or involving the 'recessed hooks' of any model or model year Jet Ski or other personal watercraft performed by you, any other Kawasaki entity, or any third party of which you are aware,

7

including but not limited to, testing at the design, manufacturing or marketing level." [Doc. #174, 20-21]. The interrogatory then requests more specific information for each test, including the date, location, purpose, and results of the testing. KMC objected to this interrogatory as vague and ambiguous with respect to what is meant by "testing at the…marketing level," and answered subject to this objection that, "KMC is not the designer and does not generally perform design-type testing. KMC does not possess information regarding testing on recessed hooks on the subject Jet Ski personal watercraft." [Id. at 21].

Plaintiffs take issue with this response for several reasons. First, plaintiffs submit that they requested KMC to admit it did not perform any testing of the recessed hooks, which KMC denied, but admitted to performing endurance testing of the entire Jet Ski, which did not involve the recessed hooks. Next, plaintiffs take issue with the boilerplate objections. Finally, plaintiffs argue that, "[t]he interrogatory asks for identification of every test involving the 'recessed hooks' performed by any Kawasaki entity and any third party." [Doc. #174, 21]. Plaintiffs moreover point to deposition testimony that **KMM** manufactured the Jet Ski based on KHI's testing. [Id. at 22].

The Court SUSTAINS in part KMC's objection. There is nothing before the Court to suggest that KMC has access to testing conducted at the design or manufacturing level, nor is there a reasonable nexus between this information sought and

KMC's relationship as distributor for KHI. See Doc. #174-6, Russell Brenan Depo. Tr., Dec. 11, 2013, 196:12-19 ("Q: To your knowledge did KMC have any role whatsoever in any testing that was done on these particular recessed hooks? A: No. And again, we only – the only type of testing we may do in terms of watercraft would be endurance-type testing. So that is a KHI function. That is a question you would have to ask them. It would not involve KMC."). This stands in contrast, however, to KMM which manufactured the Jet Ski based on KHI's testing. However, this request is not directed to KMM. Nevertheless, the Court will require KMC to provide an amended response to this interrogatory identifying any "endurance testing" KMC has conducted on any model Jet Ski from 2000 through 2008.

- **Interrogatory No. 13 of 1st Set of Ints. to KMC**

Interrogatory No. 13 asks KMC to identify the source and date of various strength and safety specifications of the recessed hook. [Doc. #174, 22]. KMC objected to this interrogatory because it is "vague and ambiguous" and answered, "Subject to and without waiving said objections, KMC is not the designer and does not generally perform design-type testing. That would be the responsibility of the designer. Nor does KMC test and obtain the kind of detailed design-type specifications of the type being sought in this interrogatory." [Id. at 22-23]. Plaintiffs take issue with this response for several reasons, including that KMC's boilerplate objections are improper and its answer is non-responsive as the rules of civil procedure require the production of information within a party's control.

9

The Court SUSTAINS KMC's objections, in light of its answer provided under oath that it does not "test and obtain the kind of detailed design-type specifications of the type being sought in this interrogatory." See also Doc. #174-6, Russell Brenan Depo. Tr., Dec. 11, 2013, 195:17-23, supra. Indeed, this interrogatory would be better directed to KMM which admittedly manufactured the subject Jet Ski based on KHI's testing, and presumably to KHI's design specifications.

- **Interrogatory No. 16 of 1st Set of Ints. to KMC**

Interrogatory No. 16 asks KMC to "identify whether any Kawasaki entities performed a hazard analysis or safety analysis or an equivalent assessment of the product to determine what hazards exist or can be produced by the presence of 'recessed hooks' on the product by the use or potential misuse of the product." [Doc. #174, 23-24]. The interrogatory then requests more detailed information for any such analysis performed. KMC objected on the grounds that "hazard analysis or safety analysis or an equivalent assessment" are vague and ambiguous and that "hazard analysis" is a term subject to different interpretations. Notwithstanding this objection, KMC answered that it "is not the designer nor is it the manufacturer of the product involved in this case. Accordingly, KMC does not generally perform design-type functions, such as the ones that are presumably being identified here." [Id. at 24].

Plaintiffs take issue with this response for several reasons, including the use of improper boilerplate objections and general non-responsiveness. The Court SUSTAINS KMC's

10

objections because there is nothing before the Court to suggest that KMC has access to these sorts of analyses, nor is there a reasonable nexus between this information sought and KMC's relationship as distributor for KHI.

- **Interrogatory Nos. 25 and 26 of 1ˢᵗ Set of Ints. to KMC**

Interrogatory No. 25 asks KMC to "State whether the 'recessed hook' was required to meet any internal safety standards or specifications established by any Kawasaki entity or any industry standards or specifications. If so, state the standard or specification as of the date of the accident that is the subject of this lawsuit." [Doc. #174, 25]. KMC did not object, but responded that it, "is not the designer nor is it the manufacturer of the product involved in this case. Accordingly, it does not generally perform design-type functions, like equipment standards or specifications that would cover the 'recessed hooks.'" [Id.]. Plaintiff contends that KMC's answer is argumentative and non-responsive.

Similarly, Interrogatory No. 26 asks KMC to "State whether the 'recessed hook' was required to meet any government standards, specifications, regulations or statutes. If so, state the standard on the date of the accident that is the subject of this lawsuit and how it was met." [Doc. #174, 25]. KMC objected on the grounds that this interrogatory is "vague, ambiguous and overbroad as it is not limited to government standards, specifications, regulations or statutes regarding any particular subject, such as pertaining to Plaintiffs' allegations of defect herein." [Id.]. Subject to this objection, KMC answered that is

"is not the designer of the product involved in this case. Accordingly, it does not generally perform design-type functions. See also response to Interrogatory No. 18." [Id.]. Plaintiffs respond that this interrogatory is clear and only seeks the standards applying to the recessed hooks.

The Court will require KMC to answer these interrogatories (as clarified by plaintiffs in their memorandum of law), in light of Mr. Brenan's deposition testimony that KHI provides KMC with information concerning product specifications and features, see Doc. #174-6, Russel Brenan Depo Tr. April 30, 2014, 274:12-25, supra, and that KMC advises KHI as to certain industry standards and regulations, see id. at 281:5-13 ("Q: How do you communicate the regulatory updates to KHI? A: The primary method that I use to update them on regulatory issues is email. I will send an email to a designated person within the certification group, which is a group that I primarily have day-to-day interaction with."); id. at 281:20-282:8 ("Q: And do you ever have to acquire information from the KHI certification group? A: Yes. Q: And how do you do that? A: Normally I would ask for that through an email. Q: And what historically has the KHI response been to those requests, historically? A: Historically, the majority of the time they're able to provide me with the information that I need. But normally it is very basic information… I will ask them for information on certain testing that they may do and how it's done."); id. at 290:2-13 ("Q: Does KMC keep KHI apprised of developments in NMMA requirements? A: Yes. Q: Why? A: NMMA is a group that we belong to, and we

12

utilize some of their standards…").

- **Interrogatory No. 28 of 1ˢᵗ Set of Ints. to KMC**

Interrogatory No. 28 asks KMC to "state whether the 2009, 2010 or 2011 STX-15F Jet Skis have 'recessed hooks.'" [Doc. #174, 26]. This interrogatory then seeks additional information if the response is "in the negative", including the reasons the hooks were removed, and whether the decision for removal was made at the manufacture or design level. KMC responded,

> Objection as this interrogatory seeks information concerning model Jet Ski not involved in this case. Subject to and without waiving that objection, 2009-2011 STX-15F JetSki PWC do not have recessed hooks. Regarding subparagraph (t), KMC did not manufacture 2009 STX-I SF JetSki PWC, but refers Plaintiffs to KMM's response to this same interrogatory. Regarding subparagraphs a-e and g-h, KMC is not the designer nor is it the manufacturer of the product involved in this case. Accordingly, it does not generally perform design-type functions, such as decisions whether to include components.

[Id. at 27].

The Court will not require KMC to answer this interrogatory. Plaintiffs have had the opportunity to depose KHI's corporate representative and ask the questions to which answers are sought.

- **Interrogatory Nos. 46 and 47 of 1ˢᵗ Set of Ints. to KMC**

Interrogatory No. 46 asks KMC to, "State whether you or your attorney or agents have any knowledge of any incidents or injuries or damage to property that occurred during operation of a Kawasaki Jet Ski or any similar personal watercraft as a result of failure to store or adequately secure a tow line or other rope." [Doc. #174, 28]. Interrogatory No. 47 asks KMC to "State whether you or your attorney or agents have any knowledge

of any incidents or injuries or damage to property that occurred

on a Kawasaki Jet Ski or any similar personal watercraft as a

result of the towing or transporting of any recreational device,

manned or unmanned, from a hook, device, or fixture on the PWC."

[Id. at 28]. Both interrogatories then seek additional

information in subpart questions. KMC responded to both of these

interrogatories as follows:

> KMC objects [] on the basis that it is overbroad and seeks
> information neither relevant nor reasonably calculated to
> lead to the discovery of admissible evidence to the extent
> it seeks information regarding incidents not substantially
> similar to the incident Plaintiffs have alleged in the
> present case or involving the model craft at issue. This
> discovery also infringes upon the attorney/client and
> attorney/work product privilege. Subject to and without
> waiving that objection, KMC is not aware of any
> substantially similar incident for any substantially
> similar product, nor has it ever been sued for such type
> injuries occurring in such situations. So, essentially, the
> answer to this question is "no."

[Doc. #174, 29-30]. Plaintiffs contend that these

interrogatories are "reasonably calculated to lead to the

discovery of admissible evidence in that negligence and punitive

damages are among the claims plaintiffs are pursuing under the

Connecticut Products Liability Act." [Id.]. Plaintiffs also

argue that KMC's attempt to "re-write" the interrogatory is

improper. KMC stands on its objection that these interrogatories

are irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence. KMC further argues that

plaintiffs have the burden of establishing the substantial

similarity predicate before they are entitled to evidence of

other claims or accidents.

Despite KMC's arguments to the contrary, "Unlike at trial,

where evidence of similar accidents is admissible only if those

14

accidents are shown to be 'substantially similar,' a court may allow discovery of similar accidents provided that the 'circumstances surrounding the other accidents are similar enough that discovery concerning those incidents is relevant to the circumstances of the instant case." Cohalan v. Genie Industries, 276 F.R.D. 161, 166 (S.D.N.Y. 2011) (multiple citations omitted).

As an initial matter, the Court agrees that these interrogatories are overly broad on their face as they are not limited in temporal scope. However, because at the discovery stage, plaintiffs need not lay the same foundation concerning "substantial similarity" as would be necessary to support admission into evidence, the Court need only find that the circumstances surrounding the other accidents are similar enough that discovery concerning those incidents is relevant to the circumstances of the instant case. Here, only interrogatory no. 47, in its current form, meets this criteria. Interrogatory no. 46 as drafted is overly broad in scope as it does not implicate a "recessed hook," which is the focal point of this litigation. Accordingly, the Court will not require KMC to answer Interrogatory No. 46, but will require it to answer No. 47 for the time period of 2000 to 2010. See, e.g., id. (emphasis in original) (where accident at issue involved particular personnel lift that tipped over while being pushed when a wheel fell off, the Court noted that, "Notwithstanding the defendant's contention that only accidents involving tip-over caused by a broken wheel are sufficiently similar under this standard, all

accidents involving both [similar models] of personnel lift in which the lift tipped over or a wheel broke are sufficiently similar to shed light on the dangerousness of the product at issue and the feasibility of alternative designs.").

- **RFP No. 12 of 1ˢᵗ Set of Production Requests to KMC**

RFP No. 12 seeks, "All documents regarding any warnings, instructions, restrictions, or other limitations related to the hazards of tow line or rope or safe handling or storage issues provided by you or any Kawasaki entity to the consumer for any year or model Jet Ski." [Doc. #174, 31]. KMC responded,

> KMC objects to Request No. 12 on the basis that it is vague and ambiguous with regard to what is meant by "safe handling or storage issues." KMC further objects to Request No. 12 on the basis that it is overbroad, unduly burdensome, and seeks documents neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in requesting all such documents regarding any year or model JetSki personal watercraft, ever. Further the phrase "tow line or rope or safe handling or storage issues" is unduly vague. Subject to and without waiving said objections, please refer to KMC's prior interrogatory responses. KMC refuses to answer for "any Kawasaki entity" in that such request is beyond the scope of permissible discovery. KMC is only obligated to respond for itself. Any information regarding this product and its uses is contained in the materials mentioned in the Interrogatory responses and Request for Production response No. 5. Generally speaking, vehicle manufacturers do not instruct operators how to pack their cars, or motorcycles, or snowmobiles, or otherwise how to transport things. Such issues are typically left to the ordinary consumer to determine based upon whatever it is that they wish to transport. See response to Request 11 above.

[Doc. #174, 31]. Plaintiffs take issue with this response for reasons similar to those previously stated.

The Court agrees that on its face, this request is overbroad in both substantive and temporal scope as it seeks information for all Jet Skis ever made and additionally requests information provided by "any Kawasaki entity." On the current

record, the Court will not compel KMC to produce documents in
response to this request as drafted.

- **RFP No. 23 of 1ˢᵗ Set of Production Requests to KMC**

RFP No. 23 seeks "All documents related to any testing on,
or involving, the 'recessed hooks' of any model or model year
Jet Ski or other personal watercraft as identified in your
response to Interrogatory No. 12." [Doc. #174, 32]. KMC
responded that it, "has no documents responsive to this request.
See KMC's response and objections to Interrogatory No. 12."
[Id.]. For reasons already stated, KMC will produce documents
responsive to this request consistent with the Court's
directives concerning KMC's answer to Interrogatory No. 12. To
the extent that KMC, after a diligent search, does not have any
documents responsive to this request, it shall so state in a
sworn verification.

- **RFP No. 24 of 1ˢᵗ Set of Production Requests to KMC**

RFP No. 24 seeks, "All documents upon which you rely as the
basis for your response to Interrogatory No. 13." [Doc. #174,
33]. KMC responded that it, "has no documents responsive to this
request." [Id.]. For reasons already stated with respect to
Interrogatory No. 13, the Court will not compel KMC to produce
documents responsive to this request. To the extent that it has
no responsive documents, then KMC should so state in a verified
response.

- **RFP No. 25 of 1ˢᵗ Set of Production Requests to KMC**

RFP No. 25 seeks, "All documents related to any hazard

analysis or safety analysis or equivalent assessments of the product upon which the design, development, design modifications or manufacture of this product relied as identified in your response to Interrogatory No. 16." [Doc. #174, 33]. KMC responded that it, "has no documents responsive to this request. See KMC's answer and objection to the corresponding interrogatory." [Id.]. For reasons already stated with respect to Interrogatory No. 16, the Court will not require KMC to produce documents responsive to this request. To the extent that it has no responsive documents, then KMC should so state in a verified response.

- **RFP No. 33 of 1st Set of Production Requests to KMC**

RFP No. 33 seeks, "Any and all standards, regulations, statutes or specifications applicable to the 'recessed hooks' of any kind as identified in your response to Interrogatory No. 25 or 26." [Doc. #174, 34]. KMC responded, "See response and objections to Interrogatory Nos. 25 or 26." [Id.]. For reasons already stated, KMC will produce documents responsive to this request consistent with the Court's directives concerning KMC's answers to Interrogatory Nos. 25 and 26. The Court will also require KMC to inquire of KHI to determine whether it has any documents related to this request for reasons already stated.

- **RFP No. 34 of 1st Set of Production Requests to KMC**

RFP No. 34 seeks, "All documents related to any decision to eliminate the 'recessed hooks' from the 2009, 2010, or 2011 STX-15F Jet Skis including but not limited to the documents identified in your response to Interrogatory No. 28." [Doc.

#174, 34]. KMC responded, "See response and objection to
Interrogatory No. 28." [Id.]. The Court will not require KMC to
produce documents responsive to this request for the same
reasons articulated above as to Interrogatory No. 28.

- **RFP No. 52 of 1ˢᵗ Set of Production Requests to KMC**

RFP No. 52 seeks, "All documents related to your knowledge
of any incidents or injuries or damage to property that occurred
on a Kawasaki Jet Ski or any similar personal watercraft as a
result of the failure to store or adequately secure a tow line
or other rope including, but not limited to any complaints or
notifications made to you or any Kawasaki entity as identified
in your response to Interrogatory No. 46." [Doc. #174, 35]. KMC
responded, "See Response to Request No. 50." [Id.]. KMC's
response to Request No. 50 incorporated its objections and
response to Interrogatories 44-48. The Court will not require
KMC to produce documents responsive to this request for the same
reasons articulated above as to Interrogatory No. 46.

- **RFP No. 53 of 1ˢᵗ Set of Production Requests to KMC**

RFP No. 53 seeks, "All documents related to your knowledge
of any incidents or injuries or damage to property that occurred
on a Kawasaki Jet Ski or any similar personal watercraft as a
result of the towing or transporting of any recreational device,
manned or unmanned, from a hook, device or fixture on the
personal watercraft including, but not limited to any complaints
or notifications made to you or any Kawasaki entity as
identified in your response to Interrogatory No. 47." [Doc.
#174, 35]. KMC responded, "See Response to Request No. 50."

[Id.]. For reasons already stated, KMC will produce documents responsive to this request consistent with the Court's directives concerning KMC's answers to Interrogatory No. 47. The Court will also require KMC to inquire of KHI to determine whether it has any documents related to this request for reasons already stated. To the extent that any documents are withheld on the basis of attorney-client privilege or work product doctrine, KMC will produce a privilege log in compliance with the local and federal rules of civil procedure.

   B. **Second Set of Interrogatories and Requests for Production**

   Plaintiffs also take issue with the responses to five interrogatories in the second set of interrogatories and two interrogatories in the fourth set of interrogatories.

- **Interrogatory No. 1 of 2nd Set of Ints. to KMC**

   The first interrogatory asks KMC to identify the "worldwide" sales of three models of jet skis for various years ranging between 2000 and 2008. KMC objected and stated "'Worldwide' sales is not defined. Basically, KMC is the wholesale distributor for the United States (although it does distribute to a few other minor locations, like portions of the Caribbean) and does not have records regarding PWC sales 'worldwide.'" [Doc. #174, 37]. The Court OVERRULES KMC's objection and will require KMC to provide the sales information for both the United States and the Western Hemisphere, where it was established at the July 15, 2013 hearing that KMC sells Jet Skis in the Western Hemisphere. See Section IVD, infra.

20

- **Interrogatory No. 7 of the 4th Set of Ints. to KMC**

Plaintiffs take issue with the answer provided to Interrogatory No. 7 of the fourth set of interrogatories, which asks KMC to identify all efforts made to determine the worldwide sales of the Jet Skis listed in Interrogatory No. 1 above. KMC answered that it, "does not have access to worldwide sales information. Such information is not within its control and no further efforts are required. KMC objects to responding further. This also exceeds the allowable number of Interrogatories." [Doc. #174, 38]. The Court will not order KMC to answer this interrogatory in light of its ruling on Interrogatory No. 1 above.

- **Interrogatory No. 8 of the 4th Set of Ints. to KMC**

Plaintiffs next take issue with KMC's answer to Interrogatory No. 8 of the fourth set of interrogatories, which inquires, "Is it KMC's contention that it cannot find out what the worldwide sales of those Jet Skis were?" [Doc. #174, 38]. KMC answered that, "Reading the complaint and the answer does not reveal any 'contention' in this case on this topic. This is a discovery matter. To the extent that KMC has a 'position', on this matter, it would be set forth in the briefs that have already been filed in this case…" [Id.]. The Court will not compel KMC to answer this interrogatory for reasons already stated.

- **Interrogatory No. 2 of 2nd Set of Ints. to KMC**

Plaintiffs seek to compel KMC's answer to Interrogatory No.

2 of the second set of interrogatories, which asks KMC to
"identify the worldwide sales of the 'recessed hooks' (or 'cargo
hooks') that are the subject of this litigation as replacement
parts for each year from 2000 through 2012." [Doc. #174, 39].
KMC answered, "See response to #1. KMC does not distribute
replacement parts 'worldwide' and, therefore, cannot respond."
[Id.]. The Court will require KMC to provide an answer to this
interrogatory which identifies the U.S. and Western Hemisphere
sales of the recessed hooks that are the subject of this
litigation as replacement parts for each year from 2000 through
2008. This is consistent with the Court's general direction at
the July 15, 2013 hearing. See Section IVD, infra.

- **Interrogatory No. 4 of 2nd Set of Ints. to KMC**

Plaintiffs next seek to compel KMC's answer to the fourth
interrogatory, which asks KMC to "identify the worldwide sales
of the cargo net for every year from 2000 through 2012." [Doc.
#174, 40]. KMC answered, "See response to #1. KMC does not sell
products 'worldwide.' Accordingly, this defendant cannot
answer." [Id.]. The Court will require KMC to provide an answer
to this interrogatory which identifies the U.S. and Western
Hemisphere sales of the cargo net for each year from 2000
through 2008. This is consistent with the Court's general
direction at the July 15, 2013 hearing. See Section IVD, infra.

- **Interrogatory No. 6 of 2nd Set of Ints. to KMC**

Plaintiffs next seek to compel KMC's answer to the sixth
interrogatory, which asks KMC to "identify the worldwide sales
of the Predecessor Cargo Hook as replacement parts for each year

in which it was available." [Doc. #174, 41]. KMC answered, "See
response to #1. KMC does not sell products 'worldwide' and,
therefore, cannot answer this question." [Id.]. The Court will
not require KMC to answer this interrogatory in light of its
ruling on plaintiffs' interrogatory no. 1 of the fourth set of
interrogatories to KMC. See Section IVD, infra.

- **Interrogatory No. 8 of 2nd Set of Ints. to KMC**

Plaintiffs also seek to compel KMC's answer to the eighth
interrogatory, which requests KMC to "Identify all documents
that set forth the division of responsibilities between KMC,
KMM[], and KHI including but not limited to the design,
manufacture, and distribution/marketing of the 2008 STX-15F, as
well as liability for any injuries caused by defects." [Doc.
#174, 42]. KMC answered,

> This interrogatory is not reasonably calculated to lead to
> admissible evidence. Plaintiffs have taken the deposition
> of a KHI engineer. None of this request is related to
> plaintiffs' burden to produce some proof of an actual
> defect. Furthermore, the question is argumentative and
> objectionable when it asks for "as well as liability for
> injuries caused by defects."
>
> Obviously, every document in the company that would
> describe who does what would fall into this category and,
> therefore, this is completely objectionable. This defendant
> will respond no further.

[Id.]. The Court SUSTAINS the objection for several reasons.
First, the interrogatory as framed is overly broad and unduly
burdensome as it implicates a large swath of documents, which
are not necessarily relevant to this litigation. Second,
plaintiffs have had ample opportunity to obtain this information
via Rule 30(b)(6) depositions and other document requests. See
Fed. R. Civ. P. 26(b)(2)(C)(ii) ("On motion or on its own, the

court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that[] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action[.]").

- **RFP No. 2 of 2nd Set of Production Requests to KMC**

Plaintiff's second request for production of their second set of requests seeks, "All documents concerning the decision to change from the Predecessor Cargo Hook to the 'recessed hook' at issue in this litigation." [Doc. #174, 42-43]. KMC responded, "The defendant is not the company responsible for the design and it does not make design decisions. However, Mr. Kamio (from KHI) described the reasons in his deposition." Plaintiffs argue that the documents sought are "at the heart of this case" and that KMC's response is non-responsive and argumentative.

As previously discussed, KMC is the distributor and marketer for the subject jet ski, and KHI is responsible for design. At the Rule 30(b)(6) deposition of KHI, Kunihiko Kamio testified regarding the decision to remove the recessed hooks from the STZ-15F in 2009:

> Originally, we had provided this cargo hook that we call as cargo hook onto the 2000 model 1100 STX[.] Even though the cargo hook was provided and our reason was for providing the – for providing this cargo hook was to increase the convenience to the users. Later on, we did market research and we did not receive much comment from the users that the cargo hook was that much useful, so based on such information as well as in order to reduce the cost, the decision was made to eliminate the cargo hook.

[Doc. #174-5, Depo Tr. Aug. 2, 2012, 15:17-16:6]. Mr. Kamio also testified that he does not know whether documents reflecting this decision exist today, but that he did recall "that at the

time discussions were held." [Id. at 16:7-13]. Russell Brenan, KMC's Rule 30(b)(6) witness, also testified regarding KMC's input, or lack thereof, involving the design of the subject recessed hooks:

> Q: To your knowledge did KMC provide any input whatsoever to KHI involving the design of these recessed hooks that are on this particular Jet Ski?
>
> A: Generally speaking, no. The design work is a KHI function, so that wouldn't be something that KMC would contribute to.
>
> Q:[…] [T]o your knowledge did KMC have any input whatsoever in providing information or any type of input to KHI with respect to the design of these particular recessed hooks?
>
> A: I don't know that we provided any specific information to the design.
>
> […]
>
> Q: To your knowledge did KMC have any role whatsoever in any testing that was done on these particular recessed hooks?
>
> A: No. and again, we only – the only type of testing we may do in terms of watercraft would be endurance-type testing. So that is a KHI function. That is a question you would have to ask them. It would not involve KMC.

[Doc. #174-6, Depo. Tr. Dec. 11, 2013, 195:17-196:19]. He also denied knowledge of KMC contributing to the market research referenced by Mr. Kamio in his deposition:

> Q: [Mr. Kamio] indicated that there had been some type of market research done involving these recessed hooks, and that based upon that market research, a decision was made to eliminate the recessed hooks from the model years after 2009, I think it was. Was KMC involved at all in that market research [that Mr. Kamio referred to]?
>
> A: I don't know if KMC was or was not.
>
> Q: Do you have a memory of KMC being involved in any market research the purpose of which was to determine the convenience or the usefulness of the recessed hooks on this particular Jet Ski model?
>
> A: No.
>
> Q: Has KHI asked KMC on other occasions to do market

> research within the United States to make a determination
> as to whether or not certain design features or component
> parts of their Jet Skis were useful or beneficial to the
> consumer?
>
> A: They've asked us to do numerous research-type
> activities. Conceivably that could be one of them, but I'm
> not certain if we had one specific to that particular
> component.

[Id. at 192:21-194:2].

In light of this deposition testimony, the Court does not find a reasonable nexus between the complete category of documents sought and KMC's relationship with KHI. Indeed, KMC's function is to distribute and market jet skis, not to design or otherwise provide design input to KHI with the exception of perhaps performing market research. Accordingly, the Court will not require KMC to respond to this request as phrased. However, the Court will require KMC to produce any market research concerning the decision to change from the Predecessor Cargo Hook to the 'recessed hook' at issue in this litigation.

- **RFP No. 3 of 2nd Set of Production Requests to KMC**

Plaintiffs' third request for production of their second set of requests seeks, "All documents concerning any and all investigations into the reason for the sale of a large number of the Recessed Hooks as replacement parts." [Doc. #174, 44]. KMC responded,

> KMC does not agree that less than a fraction of 1%
> replacement part sales is a "large number" and objects to
> this question as being argumentative. This defendant is not
> the company responsible for the design. This defendant is
> the wholesaler of replacement parts, and generally
> speaking, it does not "investigate" why consumers are
> purchasing replacement parts. The few warranty claims that
> KMC received were mostly cosmetic issues (i.e., paint
> peeling, scratches and the like).

[Id.]. Plaintiffs take exception to this response as being non-

responsive and argumentative. The Court agrees that KMC's response is generally non-responsive. KMC will provide an amended response to this request and either produce documents or, if none are found after a diligent search, will provide this response in a sworn statement. The Court will also require KMC to inquire of KHI to determine whether it has any documents related to this request in light of Mr. Kamio's deposition testimony that, "If there is a problem with a part that KMC learned about, then KMC will ask questions to KHI and KHI will provide answers. That happens." [Doc. #174-5, Depo Tr. Aug. 2, 2012, 62:22-63:24]. The Court also finds a reasonable nexus between the documents sought and KMC and KHI's relationship given that KMC admittedly is the wholesaler of replacement parts for the jet skis KHI designs.

- **Interrogatory No. 3 of 2nd Set of Ints. to KMM**

Plaintiffs' third interrogatory of their second set of interrogatories to KMM requests KMM to, "Identify every Jet Ski by model and model year which included the Cargo Net as standard equipment." [Doc. #174, 45]. KMM answered that, "'Standard Equipment' is not defined. However, during the time frame of 1997, 1998, and 1999, KMM sold STX 1100 models with cargo nets." [Id.]. Upon counsel's meet and confer, defense counsel clarified that the STX 1100 Jet Ski was the only model for which the cargo net was included in the purchase price. Plaintiffs now request that KMM make this response under oath. The Court GRANTS this request. KMM will provide a supplemental answer to this interrogatory that conforms with Rule 33(b)(3) of the Rules of

Civil Procedure.

### C. <u>Third Request for Production to KMC</u>

- **RFP No. 5 of 3rd Request for Production to KMC.**

Plaintiffs next seek to compel "a copy of the written job description for Mr. Brenan[3] as well as Friday's witness." KMC objected on the grounds of relevancy. Plaintiffs argue that they are entitled to Mr. Brenan's job description to develop evidence in response to KMC's defense that it is "just the distributor." KMC responds that Mr. Brenan testified at length about his current and past job responsibilities during his two-day deposition and plaintiffs had ample opportunity to address his work experience during the deposition. The Court agrees and will not require KMC to produce a copy of Mr. Brenan's job description in light of his deposition testimony and plaintiffs' opportunity to obtain this information from Mr. Brenan under oath. <u>See</u> Fed. R. Civ. P. 26(b)(2)(C)(ii) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that[] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action[.]"). Accordingly, plaintiffs' request to compel the production of Mr. Brenan's written job description is DENIED.[4]

- **RFP No. 7 of 3rd Request for Production to KMC**

Plaintiffs also seek to compel "Any documents which

---

[3] Mr. Brenan is KMC's corporate representative, who testified at KMC's 30(b)(6) deposition.
[4] Because plaintiffs do not address the request for the job description of "Friday's witness," the Court deems the request for this document waived.

evidence what KMC's role in advising/informing KHI of the USA
standards/regulations/statutes which apply to PWC's sold in the
USA as of 2003-2008." KMC objected to this request and further
responded,

> This request is unduly vague, but subject to and without
> waiving such objection, during that time (2003-2008) KMC
> would have been advising KHI as to changes in either Coast
> Guard regulations (there were none that related to PWCs);
> SAE PWC Standards and Recommended Practices (the last of
> those was adopted in August 2002 [approved by SAE
> International in Sept 2003]; NMMA certification agreements
> (the first of which was executed in 2002 and negotiated
> prior to that time); and any issues that came up regarding
> the revisions to the emission requirements of CARB and EPA.
> KMC objects to searching for matters related to
> environmental or emission issues as that has no conceivable
> relevance to this case. Additionally, there may have been
> other miscellaneous issues that arose during that time, but
> those records would not be over five years old and may no
> longer be in KMC's possession. Presently, KMC has not
> located any such advice that was particular to the STX I 5F
> or the recessed hook at issue here.

Plaintiffs respond that they are not interested in documents
relating to environmental or emissions standards, regulations,
or statutes. Plaintiffs further contend that the statement "may
no longer be in KMC's possession" does not fulfill KMC's
discovery obligations, and seeks and order requiring KMC to
"exhaust all reasonable efforts to locate and/or obtain
responsive documents, to produce such documents or, if no
responsive documents exist, to state so under oath while
detailing its efforts to obtain such documents." [Doc. #174,
47]. The Court GRANTS in part plaintiffs' motion to compel as to
this request. KMC will produce any documents which evidence what
KMC's role is in advising/informing KHI of the USA
standards/regulations/statutes which apply to the particular Jet
Ski at issue in this litigation and/or the recessed hook at

issue. If KMC does not have any responsive documents in its possession or control, then KMC will provide a sworn statement that despite a diligent search, no responsive documents were found. Alternatively, if documents are produced in response to this request, KMC will provide a sworn statement that after a diligent search, all responsive documents have been produced. The Court will not require KMC to detail its efforts made to locate these documents.

D. **Fourth Interrogatories to KMC**

Plaintiffs next seek to compel KMC's answers[5] to four interrogatories (**Nos. 1-4**) set forth in plaintiffs' fourth set of interrogatories. Plaintiffs generally argue that the information requested is relevant to the number of replacement parts sold and is necessary for an analysis of the replacement part data. Plaintiffs also point to the Court's July 15, 2013 hearing where the Court addressed the scope and relevance of these topics, but in the context of plaintiffs' Rule 30(b)(6) deposition notices to defendants. KMC argues that the information sought is irrelevant and not narrowly tailored to lead to the discovery of admissible evidence. KMC also argues that two of the interrogatories seek "worldwide" information which would be in the possession of KHI, to the extent that it

---

[5] Plaintiffs' motion states that, "KMC should be ordered to exhaust all reasonable efforts to locate and/or obtain responsive documents, to produce such documents or, if no responsive documents exist, to state so under oath while detailing its efforts to obtain such documents." [Doc. #174, 48-51]. However, because this portion of the motion pertains to interrogatories, as opposed to requests for production, the Court will not order KMC to produce "responsive documents."

exists, and therefore not properly requested of KMC.[6]

The Court's comments at the July 15, 2013 hearing largely addressed the relevance and scope of the information plaintiffs now seek. Although that hearing focused on the scope of plaintiffs' 30(b)(6) deposition notices to KMC and KMM, several of those topics encompassed the information sought in the following interrogatories. Indeed, the Court suggested that these topics were better reserved for interrogatories.

Plaintiffs' first interrogatory and KMC's response state,

**Interrogatory No. 1**:  Identify the number of predecessor cargo hooks sold as replacement parts, without geographic restriction, in each of the following years: [1997-2004].

**KMC Response**: See KMC's prior answers on this topic – KMC objects to responding further. This also exceeds the allowable number of interrogatories.

[Doc. #174, 47-48]. During the July 15, 2013 hearing, the Court held the following dialogue with counsel regarding this topic:

MR. PESCE (KMC counsel): Next, Your Honor, was topic 15. So topic 15 to KMC, that one asks for KMC total annual sales of the predecessor cargo hook at (sic) replacement parts for each years 1994 through 2004. And so when he says the predecessor cargo hook, he's referring to 1100STX… '97, '98 and '99. Through he says 2004.

THE COURT: Right, and I think that's okay.

MR. PESCE: So this again would fall in the category of the same objections as we had before, and this is really an interrogatory as opposed to a topic.

THE COURT: Right, and I think if we do this as an interrogatory the same way we do the other one […] that should provide at least a basis for [plaintiffs' counsel] to do what he thinks he needs to do.

MR. FAULKNER (plaintiffs' counsel): Right. And if I understand Your Honor, the Court is saying that it would

---

[6] As to KMC's position that plaintiffs have exceeded the number of permissible interrogatories, the Court will not deny plaintiffs' requests on this basis. Although the better practice is to seek leave to serve the excess interrogatories, the Court implicitly permitted plaintiffs to serve interrogatories encompassing the below topics at the July 15, 2013 hearing.

not be proper to make a relevance objection in discovery to
these two topics.

THE COURT: It sounds real good to me the way I conceived it
and the way you described it.

MR. PESCE: Kawasaki will respectfully file a response, and
it'll be an objection[…] I don't think it's relevant[…]

THE COURT: I don't think it will come as any surprise to
you if you make a relevance objection, I'll overrule it[…]
But there may be some other reason that I haven't heard
that he shouldn't get this information, but it sounds to
me, based on sort of a general description of where their
case is going, that it could lead to the admissibility of
evidence. It might even be admissible itself.

[July 15, 2013 Hrg. Tr. 33:24-35:19]. As the Court has already
found, the information sought in the first interrogatory is
relevant. KMC has failed to provide any other reason, other than
those previously addressed by the Court, as to why the
information sought is not relevant.  Accordingly, KMC's
relevance objection is OVERRULED. With respect to the geographic
scope of the request, the Court will not compel KMC to provide
the "worldwide" information sought, but rather will require KMC,
to the extent it has not already provided this information, to
provide the number of cargo hooks sold as replacement parts in
the United States, and in the Western Hemisphere, for each of
the years sought in the first interrogatory. This is consistent
with the Court's prior ruling permitting this scope of
information as to other similar requests.  See id. at 37:1-49:22
(discussing Rule 30(b)(6) topic as interrogatory seeking KMC's
total annual sales of recessed hooks as replacement parts for
2000 through 2012 and finding plaintiff entitled to information
for replacement parts sold from 2000 through 2008 both in the
United States and Western Hemisphere. In so finding, the Court

stated, "[N]ow that we all know that [KMC] sell[s] not just in the United States but also in the hemisphere, that it would behoove you, if it's available, to tell them the number for the United States as well as the overall number."); see also id. at 50:4-10 (The Court confirmed defense counsel's understanding that, "KMC[] is going to go back and identify the total number of replacement recessed hooks for the period of 2000 to the date of the accident, whether or not they happened – whether the purchases were from the U.S. or the hemisphere.").

Plaintiffs' second through fourth interrogatories, and KMC's responses thereto, all relate to "cargo nets", and state:

**Interrogatory No. 2**: Identify by model and model year all Jet Skis that were sold with a cargo net from 1997 through 2009 other than the 1997-1999 1100 STX (identified in response to Int. No. 3 of Plaintiffs' Second Set of Interrogatories which KMC responded to on or about Aug. 31, 2012).

**KMC Response**: Cargo nets are not an issue in this case and this is not reasonably discoverable. This also exceeds the allowable number of interrogatories.

**Interrogatory No. 3**: Identify by model and model year all Jet Skis for which a cargo net was offered as optional equipment from 1997 through 2009.

**KMC Response**: Cargo nets are not an issue in this case and this is not reasonably discoverable. This also exceeds the allowable number of interrogatories.

**Interrogatory No. 4**: Identify the number of cargo nets sold by KMC, without geographic restriction, for each of the years 1997 through 2009.

**KMC Response**: This is not reasonably calculated to lead to the discovery of admissible information and exceeds the number of permissible interrogatories. KMC does not intend to respond to this question.

[Doc. #174, 48-50]. Again, the Court addressed the topic(s) of these interrogatories at the July 15, 2013 hearing. For example, in addressing proposed topic 13 of the Rule 30(b)(6) deposition

notice, plaintiffs' counsel and the Court had the following
dialogue:

> MR. FAULKNER: […] So eventually my hope is that someday
> you'll have the replacement number for the part at issue
> compared to the number of units jet skis sold, you know, it
> was on a number of different models, so that we can compare
> it to – I would venture a guess that the number of
> replacement parts of old hook used on the '97 through '99
> 1100STX is a very small number, because you could only use
> a cargo net with it.
>
> So that's why we want to be able to compare apples with
> apples. You need to know the number of jet skis with the
> hook sold. You need to know whether or not the cargo net
> came as included equipment; if not, how many cargo nets
> they sold; and then you ask the same questions about the
> hook or cleat that we criticized as defective.
>
> THE COURT: Why is this not an interrogatory?
>
> MR. FAULKNER: It easily could be an interrogatory. My
> experience is you get better answers from a deponent if you
> could follow up, but if you can get the numbers by way of
> an interrogatory, that's fine with me, too.
>
> THE COURT: I think it's a reasonable request, but I think
> it's an interrogatory[…]

[July 15, 2013 Hrg. Tr. 31:13-32:12]. As the Court previously
found, the information sought in these interrogatories is
reasonable. The Court further more finds that the information
sought is reasonably calculated to lead to the discovery of
admissible evidence. KMC has failed to provide any other reason,
other than those previously addressed by the Court, as to why
the information sought is not relevant.  Accordingly, KMC's
relevance objections are OVERRULED. For the reasons already
stated, the Court will limit the geographic scope of the
information sought to the United States and the Western
Hemisphere. Finally, the Court will only compel KMC to provide
answers through the year 2008 as this is again consistent with
the Court's other rulings during the July 15, 2013 hearing. See

id. at 46:23-47:3 ("I don't think on this record past the accident is necessary, or likely to lead to admissible evidence. So to the extent there's an objection to anything past the accident, that's sustained.").

### E. **Fifth Set of Production Requests to KMC**

Plaintiffs next take issue with four requests (**Nos. 1,2,3, and 7**) for production in their fifth set of production requests. These requests seek various marketing materials and documents relating to warranty claims involving a predecessor "cargo hook." After meeting and conferring, KMC indicated it had searched for documents responsive to these requests to no avail. In defendants' memorandum of opposition, KMC further expounds on the efforts it undertook to locate any responsive documents and unequivocally states "there are no documents responsive to these requests." Plaintiffs request that the Court order KMC to make this response under oath. The Court GRANTS plaintiffs' request for the same reasons previously articulated in Section IIIA above.

### V.   **Conclusion**

Plaintiffs' motion to compel [Doc. #173] is **GRANTED in part and DENIED in part,** as articulated above.  To the extent that this ruling orders the production of additional documents, attestations, or answers to interrogatories, such information will be produced within thirty (30) days of this ruling, or as agreed to by the parties.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly

erroneous" statutory standard of review. 28 U.S.C. §
636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R.
72.2. As such, it is an order of the Court unless reversed or
modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 16th day of December 2014.


_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE