UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARLY LUTES, KEVIN LUTES, and S.L.,
Plaintiffs,

v. : 3:10-cv-01549-WWE

KAWASAKI MOTORS CORP. U.S.A., and KAWASAKI MOTORS MANUFACTURING CORP. U.S.A.,
Defendants.

**MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this action, plaintiffs Carly Lutes, Kevin Lutes, and S.L., their minor daughter, seek damages pursuant to Connecticut's product liability statutes, § 52-572m, *et seq*. Plaintiffs also allege negligent infliction of emotional distress.

Mrs. Lutes's hand was severed when a hook on her Jet Ski broke and the tow rope constricted around her arm, pulling her from the boat. Plaintiffs allege that the failure of the hook caused Mrs. Lutes's injuries. Defendants Kawasaki Motors Corp. U.S.A. and Kawasaki Motors Manufacturing Corp. U.S.A. have moved for summary judgment on four aspects of plaintiffs' claims: (1) manufacturing defect; (2) design defect; (3) S.L.'s claim for emotional distress; and (4) punitive damages. For the following reasons, defendants' motion will be granted in part and denied in part.

**BACKGROUND**

The accident occurred on August 31, 2008, on the Susquehanna River in Pennsylvania. Mr. Lutes was operating the Jet Ski with his 2 ½ year old daughter sitting in front of him and Mrs. Lutes riding as rear passenger. The Jet Ski towed an empty tube connected by a 60 foot tow

rope. The tube's tow rope was attached to the rear towing hook, but the slack line was gathered and secured to the Jet Ski at second attachment point, with Mrs. Lutes carrying the slack between the two points of connection. The parties dispute the proper name of the second attachment point for semantic reasons; plaintiffs prefer "cleat," while defendants prefer "cargo hook" or "recessed hook." The owner's manual labels the attachment points as "recessed hooks."

Plaintiffs submit that the second hook broke away from the Jet Ski causing the previously slack line to rapidly constrict around Mrs. Lutes's left arm, pulling her violently off the Jet Ski and severing her hand from her arm. Plaintiffs allege that the defendants are liable for the defective and unreasonably dangerous condition of Jet Ski.

**DISCUSSION**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.

Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

**Product Liability Law in Connecticut**

The Connecticut Product Liability Act ("CPLA") procedurally consolidates "all claims or actions brought for personal injury ... caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product." Conn. Gen. Stat. § 52-572m(b). The CPLA does not alter the substance of a plaintiff's rights. See Winslow v. Lewis-Shepard, Inc., 212 Conn. 462, 470-71 (1989). Thus, plaintiffs' theories of recovery are assessed in light of the Connecticut common law requirements. Lamontagne v. E.I. Du Pont De Nemours & Co., Inc., 41 F.3d 846, 856 (2d Cir. 1994).

Connecticut courts have adopted the strict liability test established at § 402A of the Restatement (Second) of Torts. Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 214 (1997). That test looks to whether the product in question was sold "in a defective condition unreasonably dangerous to the user or consumer . . ." Restatement (Second) Torts § 402A. "Under this formulation, known as the 'consumer expectation' test, a manufacturer is strictly liable for any condition not contemplated by the ultimate consumer that will be unreasonably dangerous to the consumer." Potter, 241 Conn. at 211-12. "[T]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Id. at 214-15 (quoting Restatement (Second) Torts § 402A, comment (I)). To succeed on a product liability

claim in Connecticut, a plaintiff must show that the product was in a defective condition unreasonably dangerous to the consumer or user and that the defective condition existed at the time the product left the defendant's control.

**Manufacturing Defect**

Defendants have moved for summary judgment as to the existence of a manufacturing defect. Plaintiffs have responded that no such claim is being pursued. Accordingly, defendants' motion as to the existence of a manufacturing defect will be granted.

**S.L.'s Claim of Bystander Emotional Distress**

Defendants have moved for summary judgment as to S.L.'s claim of bystander emotional distress. Plaintiffs have responded that they have abandoned this claim. Accordingly, defendants' motion as to S.L.'s claim of bystander emotional distress will be granted.

**Design Defect**

Defendants have moved for summary judgment as to the existence of a design defect, asserting that expert testimony is necessary to establish such a defect in this case and submitting that once defendants' motions to preclude plaintiffs' expert witnesses are granted, there will be no expert opinion on the issue of design defect.

> A product is defectively designed if: (1) it failed to perform as safely as an ordinary consumer would expect when used in a reasonably foreseeable manner (the "ordinary consumer expectations" test); or (2) in the case of complex products, the risk of danger inherent in the design of the product outweighs its utility (the "modified consumer expectations" test). *See Potter*, 241 Conn. at 211–12, 219–20, 694 A.2d 1319. Lastly, a warning defect exists when a product is unreasonably dangerous because it lacks adequate warnings or instructions concerning the product's dangerous propensities. *See Sharp v. Wyatt, Inc.*, 31 Conn.App. 824, 833, 627 A.2d 1347 (1993), aff'd, 230 Conn. 12, 16, 644 A.2d 871 (1994). In such cases, the failure to warn itself makes the product defective.

Moss v. Wyeth Inc., 872 F. Supp. 2d 162, 166 (D. Conn. 2012).

Expert testimony is not necessary to the determination of defect in this case, as laymen are capable of determining whether the hook's failure rendered the subject Jet Ski dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it. See Potter, 241 Conn. at 211-20. Despite the facially apparent nature of the defect in this case, defendants argue that "[i]n order to establish a design defect there must be testimony on the key issues (defect and causation)."

> Connecticut courts, however, have consistently stated that a jury may, under appropriate circumstances, infer a defect from the evidence without the necessity of expert testimony. *See, e.g., Standard Structural Steel Co. v. Bethlehem Steel Corp.*, 597 F. Supp. 164, 183 (D.Conn.1984) (recognizing Connecticut law permits fact finder to draw inference of defect from circumstantial evidence); *Living & Learning Centre, Inc. v. Griese Custom Signs, Inc.*, 3 Conn. App. 661, 664, 491 A.2d 433 (1985) ("It is not necessary that the plaintiff in a strict tort action establish a specific defect as long as there is evidence of some unspecified dangerous condition. In the absence of other identifiable causes, evidence of malfunction is sufficient evidence of a defect under § 402A of the Second Restatement of Torts."); *Kileen v. General Motors Corp., 36 Conn. Supp*. 347, 349, 421 A.2d 874 (1980) ("[t]he fact finder can find, where other identifiable causes are absent, that the mere evidence of a malfunction is sufficient evidence of a defect"); *see also annot*., 65 A.L.R.4th 346, 354-58 (1988) (listing twenty-eight states that allow establishment of prima facie case of design defect based upon inferences from circumstantial evidence).

Id. at 218. The hook's failure in this case is indisputable evidence of a malfunction sufficient to infer a defect. Accordingly, expert testimony is not necessary to establish a defect in this case. Nevertheless, the Court finds that the specialized knowledge of plaintiffs' experts may be helpful to the jury.

**Plaintiffs' Experts**[1]

The district court has a "gatekeeping" role pursuant to Federal Rule of Evidence 702 and is charged with ensuring that an expert's testimony rests on a reliable foundation and is relevant to issues presented in the case. Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002). A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

The Court should consider (1) whether a theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993); Amorgianos, 303 F.3d at 266. The burden is on the party proffering the expert testimony to lay a foundation for its admissibility, and a court must consider the totality of the expert witness's background when evaluating expert qualifications. Kuzmech v. Werner Ladder Co., 2012 WL 6093898, *7 (D. Conn. 2012).

---

[1]Plaintiffs have given notice that previously disclosed expert witness, Simon Bellemare, Ph.D., P.E., will not be called as an expert. Defendants request that the Court preclude any reference or reliance on Bellemare's testimony. The Court will grant this request subject to reconsideration at trial.

**Christopher D. Barry**

Mr. Barry is licensed in mechanical engineering, naval architecture and marine engineering. He is currently a lead technical naval architect with the Boat Engineering Branch of the U.S. Coast Guard Engineering Logistics Center, responsible for engineering for new acquisition and support of the Coast Guard's fleet of boats and patrol cutters, including new design, stability and structural analysis, accident investigation, and problem correction.

**Thomas W. Eagar**

Mr. Eagar earned a B.A. and a Sc.D.[2] in metallurgy from Massachusetts Institute of Technology ("MIT"). He is a Professor of Materials Engineering and Engineering Management at MIT where he has also served as department Chairman. Dr. Eagar's research involves materials manufacturing and engineering systems such as product design and development, materials systems analysis, materials selection, and failure analysis. He has published more than 200 peer-reviewed articles, holds more than a dozen patents in the field of materials science, has received scores of honors and awards over the course of his career, and is a registered engineer. He has taught at MIT for more than 40 years.

**Michael M. Sampsel**

Mr. Sampsel is a licensed professional engineer and a boat accident reconstruction expert. On a navy ROTC scholarship, Mr. Sampsel earned a Bachelor of Science in mechanical engineering from the University of New Mexico and was commissioned an ensign in the U.S. Navy. He obtained a master's degree in mechanical engineering at the naval post-graduate

---

[2] Doctor of Science (Latin: *Scientiæ Doctor*), usually abbreviated Sc.D. is an academic research doctoral degree awarded by research universities. The academic research Sc.D. is considered by both the United States Department of Education and the National Science Foundation to be equivalent to the Ph.D.

school in Monterey, California, and later served with the Navy's Engineering Duty Corps with sea and shore assignments in naval shipbuilding, ship modernization, ship repair, and nuclear submarine construction programs. Mr. Sampsel also worked for many years in private industry formulating ship maintenance plans and performing other engineering duties. He has owned his own consulting business since the mid 1980s, through which he has accomplished various mechanical, marine, design and forensic projects. He is a member of several professional organizations including NAFE (National Academy of Forensic Engineers), NSPE (National Society of Professional Engineers), ASME (American Society of Mechanical Engineers), ASNE (American Society of Naval Engineers), and SNAME (Society of Naval Architects and Marine Engineers). He has also literally written the book on boat accident reconstruction (Boat Accident Reconstruction and Litigation, Lawyers & Judges Publishing Co., Inc. (2011)), which is now in its 3rd edition.

The Court finds that the specialized knowledge of plaintiffs' experts will assist the trier of fact in understanding the evidence of this case to determine whether the Jet Ski at issue was in a defective condition unreasonably dangerous to the consumer. Moreover, the Court finds no reason why the experts' reasoning and methodology cannot appropriately be applied to the facts of this case. Indeed, defendants' position would essentially undermine the strict liability theory of products liability for this type of case: defendants argue that plaintiffs require expert testimony to prove the alleged defect but that the qualifications and techniques of two experienced naval engineers and an MIT materials science professor are not adequate to assist the trier of fact to decide "any issue in this case."

To the extent that defendants find the methodologies and data used by plaintiffs' experts

to be problematic, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993).

**Punitive Damages**

Defendants submit that there is no evidence to establish the requisite standard of reckless disregard for punitive damages.

> Punitive damages may be awarded if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product.

Conn. Gen. Stat. § 52-240b.

Defendants argue that for plaintiffs to prove reckless disregard, there must be some risk for defendants to have disregarded. Defendants contend that "Here there was no risk to regard." To demonstrate a lack of risk, defendants submit that (1) American and European regulations do not identify cargo hooks as a safety concern; (2) the Jet Ski's owner's manual clearly explains that when towing, the operator should use the tow hook or towing eyes; and (3) there is no history of any personal injury claim arising out of a cargo hook breaking due to a user towing any object from a cargo hook.

Defendants cite Walters v. Howmedica Osteonics Corp., 676 F. Supp. 2d 44, 56-57 (D. Conn. 2009) for the proposition that where there is no notice of injury or danger, there can be no recklessness. In Walters, the district court found "no indication that Howmedica [had] ignored a manifest problem in its surgical trays." Id. at 56. In the instant case, defendants argue that there is similarly no evidence that Kawasaki knew of or consciously chose to ignore any manifest danger related to the cargo hooks. However, plaintiffs have presented evidence that 2,715 of the

subject "recessed hooks" have been sold as replacement parts from 2001 through 2012. Drawing all reasonable inferences in favor of plaintiffs, the Court finds the large number of replacement hooks to be reasonably indicative of a manifest problem with the hooks.

Referencing the replaced hooks, defendant responds that "there is no evidence that any of them were broken," but the Court is not persuaded. The parties appear to agree that if the recessed hooks were used as defendants intended, to secure small cargo, none would break. The Court finds that a reasonable jury could view the sales of 2,715 replacement hooks as evidence that the recessed hooks were not used by consumers as intended by defendants.[3] Viewed in the light most favorable to plaintiffs, and considering that Jet Skis are marketed for towed-water-sports, the large number of replacement hooks is evidence of risk. Accordingly, defendants argument, that here there was no risk to regard, fails. Defendants' motion for summary judgment as to punitive damages will be denied.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is GRANTED in part and DENIED in part. Defendants' motion is granted as to manufacturing defect and S.L.'s claim for bystander emotional distress and denied as to design defect and punitive damages.

Dated this 17th day of December, 2015, at Bridgeport, Connecticut.

/s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE

[3]The common law misuse defense does not encompass foreseeable misuse. See Elliot v. Sears, Roebuck and Co., 229 Conn. 500, 507 (1994).